# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RICK JAMES KOLOSSO,**　　　　　　　　　　　　　Case No. 16-CV-825

　　Plaintiff,

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,**

　　Defendant.

## DECISION AND ORDER

　　Rick James Kolosso alleges disability based on a number of physical and mental impairments. After the Social Security Administration denied his applications for disability benefits, Mr. Kolosso requested and received a hearing before an Administrative Law Judge (ALJ). The ALJ determined that Mr. Kolosso remained capable of working notwithstanding his impairments. Mr. Kolosso now seeks judicial review of that decision.

　　Mr. Kolosso argues that the ALJ erred by failing to apply the correct legal standards in finding Kolosso not disabled. The Commissioner contends that substantial evidence supports the ALJ's decision. For the reasons that follow, the Court finds that the ALJ did not commit reversible error when she determined that Mr. Kolosso is not disabled. The Court therefore will affirm the Commissioner's decision denying Mr. Kolosso disability benefits.

I.  **Background**

Rick James Kolosso was born on July 26, 1976. Transcript 40. As of October 29, 2014, Mr. Kolosso was married and had two children, ages nine and fourteen. Tr. 41. Mr. Kolosso was approximately 5'9" tall and weighed 360 pounds. He did not have any income but his wife provided for the household. Tr. 43. Mr. Kolosso completed high school and received his Associates Degree. Tr. 41. He previously worked in remodeling and construction but stopped working in 2010 due to physical and mental ailments. Tr. 42.

Mr. Kolosso suffers from a number of impairments, including sleep apnea, fibromyalgia, osteoarthritis, hypertension, depression, anxiety disorder, panic disorder, and chronic fatigue syndrome. TR. 63. In February 2012, he filed applications for disability insurance benefits and supplemental security income, alleging disability as of April, 25, 1999. Tr. 64. After the Social Security Administration denied his applications initially, Tr. 15, and upon reconsideration, Mr. Kolosso requested and received a hearing before an administrative law judge. Tr. 15. Mr. Kolosso was represented by counsel at the October 29, 2014 hearing; the ALJ heard testimony from Mr. Kolosso and a vocational expert. Tr. 40-59.

The ALJ followed the five-step sequential evaluation process and on January 21, 2015, she issued a decision unfavorable to Mr. Kolosso. Tr. 15–26. The ALJ determined that (1) Mr. Kolosso engaged in substantial gainful activity since his alleged onset date; (2) Mr. Kolosso suffered from the following severe impairments: sleep apnea, fibromyalgia, right knee cyst, cardiomegaly, possible somatoform

disorder, possible osteoarthritis of the wrists, depression, anxiety disorder, and panic disorder; (3) Mr. Kolosso did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Mr. Kolosso had the residual functional capacity to perform sedentary work limited to simple, routine, repetitive, non-complex work; (4) Mr. Kolosso was not able to perform his past relevant work as a carpenter and janitor; and (5) Mr. Kolosso remained capable of performing the requirements of various unskilled, sedentary occupations. *See* Tr. 17–25. Based on those findings, the ALJ concluded that Mr. Kolosso was not disabled.

Thereafter, the Appeals Council denied Mr. Kolosso's request for review, Tr. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Mr. Kolosso filed this action on June 28, 2016, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Complaint, ECF No. 1. The matter was reassigned to this Court after both parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 4 & 6 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition. *See* Plaintiff's Brief, ECF No. 20; Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 24; and Plaintiffs Reply Brief, ECF. No 25.

## II.  Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Judicial review is limited to determining whether the Commissioner's final decision is supported by "substantial evidence." *See* § 405(g); *see also Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore*, 743 F.3d at 1120–21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Rather, the Court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Moore*, 743 F.3d at 1121. The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion,"

*Beardsley*, 758 F.3d at 837. Likewise, the Court must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121.

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003).

## III. Discussion

Mr. Kolosso maintains that he is disabled and therefore entitled to disability benefits under the Social Security Act; alternatively, he seeks remand to the Commissioner for further administrative proceedings. Brief 24.

### A. Legal framework

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to his prior job and is not capable of

5

engaging in any other substantial gainful work that exists in the national economy. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe*, 425 F.3d at 352. "The claimant bears the burden of proof at steps one through four." *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**B. Legal analysis**

Mr. Kolosso argues that the ALJ erred by (1) failing to apply the correct legal standards in finding Mr. Kolosso not disabled; and (2) making a disability finding which is not supported by substantial evidence in the record. Br. 2. Mr. Kolosso

further maintains that the Appeals Council erred in rejecting new opinion evidence that was submitted. The court will address each argument in turn.

   1. **Whether the ALJ erred by failing to apply the correct legal standards**

Mr. Kolosso argues that the ALJ erred by failing to apply the correct legal standards in finding Mr. Kolosso disabled. Specifically, Mr. Kolosso claims that the ALJ failed to comply with 20 C.F.R. § 404. 1527(c)(2) by erroneously giving insufficient weight to the medical opinions of Drs. Hanson and Grunert,[1] Mr. Kolosso's treating sources. *See* Plaintiff's Brief, ECF No. 20.

Section 404.1527 Title 20 of the Code of Federal Regulations, provides a legal framework for how medical opinion evidence is to be weighed and evaluated. In order for a treating source's opinion to be given controlling weight under § 404.1527(c)(2), it must be both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). If it is determined that a treating source is not entitled to controlling weight under § 404.1527(c)(2), it is weighed under regulatory factors, the same as any other medical opinion. 20 C.F.R. 404.1527(c).

With respect to Dr. Hanson's opinion evidence, the ALJ here afforded it little weight, concluding that the opinion evidence did not meet the standards set out by 404.1527(c)(2) to entitle it to controlling weight. Mr. Kolosso maintains that the

---

[1] Mr. Kolosso concedes in his reply brief that a reversal and/or remand turns in large part on the opinions of Dr. Hanson. *See* Pl.'s Reply Br. 1. Thus, the Court will only address Dr. Hanson's medical opinions.

7

medical opinion of Dr. Hanson is entitled to controlling weight "as a result of her unique perspective of and longitudinal picture as *treating* psychologist." Pl.'s Br. 12. The Court disagrees.

To be given controlling weight, a treating source's medical opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. § 404.1527(c)(2). Dr. Hanson became involved in the treatment of Mr. Kolosso in February 2012 and last saw him in September 2012. Tr. 23. While Mr. Kolosso saw Dr. Hanson biweekly throughout their seven month treating relationship, Tr. 729, the ALJ found that Dr. Hanson employed no objective medical testing modalities. Tr. 23. The ALJ's determination is supported by Dr. Hanson's own therapy session records which give no indication of any psychological testing done on Mr. Kolosso. *See* Exhibits 8F, 12F, and 16F. For example, Dr. Hanson states that Mr. Kolosso's memory, concentration, and cognitive clarity are diminished, but she gives no basis for how she came to that conclusion, other than Mr. Kolosso having forgotten about an appointment. Tr. 173-74. Moreover, Dr. Hanson's opinions appear to be based on Mr. Kolosso's subjective complaints of his symptoms rather than objective evidence. *See* Ex. 8F, 12F, and 16F.

The ALJ also found Dr. Hanson's opinions to be inconsistent with other evidence in the record, including her own therapy session records. Tr. 23. Dr. Hanson opined that Mr. Kolosso has had three or more episodes of decompensation within 12 months lasting two weeks or longer, Ex. 20F, but there is no evidence of these

8

episodes in Dr. Hanson's recorded therapy sessions with Mr. Kolosso, or elsewhere in the record. *See* Ex. 8F, 12F, and 16F. In fact, much of Dr. Hanson's treatment of Mr. Kolosso related to Mr. Kolosso's martial and familial issues. *See Id*. Furthermore, Dr. Hanson opined that Mr. Kolosso has "marked" limitations of daily living and social functioning, indicating that Mr. Kolosso's impairments seriously interfere with his ability to function independently. Tr. 733. The record shows otherwise; Mr. Kolosso reported daily activities and hobbies such as taking his kids to and from school, riding his motorcycle, swimming, and driving remote control vehicles. Ex. 16F. Participation in these activities is inconsistent with an individual who has "marked" limitations.

For the reasons aforementioned, there is substantial evidence in the record to show that the ALJ did not give insufficient weight to the opinion evidence of Dr. Hanson.

**2. Whether the ALJ erred by making a disability finding that is not supported by substantial evidence**

Mr. Kolosso maintains that the ALJ erred in making an unfavorable disability finding. As mentioned above, to make a disability determination, a five-step sequential evaluation process must be followed. The ALJ here went through each step of the evaluation process to determine that Mr. Kolosso is not legally disabled. This Court's review of the ALJ's analysis found nothing to undercut that conclusion.

Step one of the evaluation process asks whether the claimant has engaged in substantial gainful activity since his alleged onset of disability. Mr. Kolosso alleges his onset date to be April 25, 1999. Tr. 17. The ALJ found that Mr. Kolosso has

worked since his alleged onset date, with earnings exceeding substantial gainful activity levels in the years 2000, 2002, and 2003. *Id*. Moreover, at his hearing with the ALJ, Mr. Kolosso admitted that he worked through 2010, which is well after his alleged onset date. Tr. 42. There is substantial evidence in the record to support the ALJ's finding that Mr. Kolosso has worked since his alleged onset date.

Step two asks whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe. The ALJ here determined that Mr. Kolosso suffered from various severe impairments such as sleep apnea, fibromyalgia, right knee cyst, cardiomegaly, possible somatoform disorder, possible osteoarthritis of the wrists, depression, anxiety disorder, and a panic disorder. Tr. 17. In 2006, Mr. Kolosso was diagnosed with cardiomegaly, hypertension, and sleep apnea. Tr. 396-455; Tr. 334-365. In 2007, Mr. Kolosso was diagnosed with fibromyalgia and probable osteoarthritis in the wrists. Tr. 330. In 2012, Mr. Kolosso underwent a mental health assessment for depression and anxiety. Tr. 567-574. There is substantial evidence in the record to support the ALJ's finding that Mr. Kolosso suffers from the severe impairments previously listed.

Step three asks whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling. The ALJ concluded that the evidence does not support such a conclusion that Mr. Kolosso's symptoms meets or equals any medical listing. In making this determination, the ALJ first considered Mr. Kolosso's fibromyalgia and concluded that because

fibromyalgia is not a listed impairment, Mr. Kolosso cannot establish disability based on this diagnosis alone absent other, disabling symptoms. Tr. 18.

Next, the ALJ considered Mr. Kolosso's sleep apnea under listing 3.10. Because there is no clinical evidence that Mr. Kolosso's sleep apnea has resulted in chronic cor pulmonale as required to meet the criteria of this listing, the ALJ determined that this impairment did not qualify Mr. Kolosso as presumptively disabled. The ALJ also considered Mr. Kolosso's possible osteoarthritis. To be presumptively disabling, as defined in 14.00CG and C7 respectively, Mr. Kolosso's osteoarthritis needed to have caused him persistent inflammation or deformity of a major peripheral joint in the upper or lower extremities, resulting in an inability to ambulate effectively or perform fine and gross motor movements effectively. Tr. 19. Although Mr. Kolosso has reported pain in his upper and lower extremities, Tr. 49, there is no indication that his possible osteoarthritis meets the requirements of the listing. Tr.19.

Finally, the ALJ considered Mr. Kolosso's mental impairments under the criteria of listings 12.04, 12.06, and 12.07. To meet any of these listings, Mr. Kolosso must satisfy "paragraph B" criteria, meaning Mr. Kolosso's mental impairments must result in at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Tr. 19.

With regard to activities of daily living, the ALJ found that Mr. Kolosso's restriction in this area is moderate. In support, the ALJ pointed to Mr. Kolosso's own testimony that he transports his children to and from school, plays games with them, and uses the computer. Tr. 19. Additionally, Mr. Kolosso reported to Dr. Hanson that his hobbies include swimming, riding his motorcycle, and driving remote controlled vehicles. Ex. 16F. Thus, there is evidence in the record to support a moderate rather than a marked limitation in this area.

With regard to social functioning, the ALJ found that Mr. Kolosso has moderate difficulties. Mr. Kolosso reported that he didn't do any activities with friends or family, Tr. 45, and that it is hard for him to leave the house, Tr. 580. Nonetheless, Mr. Kolosso told his doctors that he goes camping and fishing in the summer, and has movie nights with his family. Ex. 9F. Accordingly, there is evidence in the record to support a moderate limitation in this area.

With regard to problems with concentration, persistence, or pace, the ALJ again found that Mr. Kolosso has moderate difficulties. Mr. Kolosso stated that he cannot remember things, cannot concentrate, and that looking at things too long gives him a headache. Ex. 9E. Yet, Mr. Kolosso testified that he drives his children to and from school, spends two hours a day on the computer, and does a lot of reading. Tr. 45-47. The record thus supports the ALJ's finding of a moderate rather than marked limitation in this area.

Finally, as for episodes of decompensation, the ALJ stated that the record does not demonstrate that Mr. Kolosso has experienced any episodes of decompensation.

While Mr. Kolosso reported that he experiences about two panic attacks per month, Tr. 568, there is no indication in the record that any episodes of decompensation have lasted for an extended period of time.

For the above-mentioned reasons, there is sufficient evidence in the record to support the ALJ's conclusion that Mr. Kolosso does not have an impairment or a combination of impairments that meets or equals the severity of one of the listed impairments.

Step four of the evaluation process asks whether the claimant's residual functional capacity (RFC) leaves him unable to perform the requirements of his past relevant work. In between steps three and four of the evaluation process, the ALJ is required to make a RFC finding for the claimant; that is, the ALJ must determine the most that the claimant can do despite his impairments. *See* 20 C.F.R. § 416.945. Here, the ALJ determined that Mr. Kolosso has the RFC to perform sedentary work, limited to simple, routine, repetitive, non-complex tasks. Tr. 20.

Based on Mr. Kolosso's RFC, the ALJ further determined that Mr. Kolosso is unable to perform his past relevant work as a carpenter and janitor.[2] Tr. 24. This finding is supported by the vocational expert's testimony that Mr. Kolosso would be incapable of performing his past relevant jobs due to the high exertional requirements of those jobs compared to the RCF limitations determined by the ALJ.

---

[2] Although Mr. Kolosso states that he previously worked in remodeling and construction, the vocational expert testified that the best description of his work in the Dictionary of Occupational Titles would be that of a carpenter and janitor. Tr. 56-57.

13

Tr. 57. There is substantial evidence in the record to support the ALJ's finding that Mr. Kolosso is unable to perform past relevant work.

Finally, step five asks whether the claimant is unable to perform any other work. To determine whether Mr. Kolosso is able to perform other work, the ALJ considered Mr. Kolosso's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines. Tr. 24. The ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Kolosso is able to perform. In support of that determination, the vocational expert testified that a person with Mr. Kolosso's limitations would be qualified to perform multiple jobs that exist in significant numbers. Those jobs include order clerk, information clerk, industrial inspector, and security guard, with the number of jobs existing in the national economy being 220,000; 351,000; 32,400; and 113,000 respectively. Tr. 57-58. Accordingly, there is substantial evidence in the record to support the ALJ's finding that Mr. Kolosso is capable of making an adjustment to other work that exists in the national economy.

For the reasons aforementioned, the ALJ did not err in making a disability finding that is not supported by substantial evidence.

### 3. Whether the Appeals Council erred in rejecting new opinion evidence

Mr. Kolosso argues that the Appeals Council erred in rejecting the opinion evidence of Dr. James Winston. At the time of the Appeals Council's denial of review, 20 C.F.R. § 404.970(b) governed the submission of new evidence. Section 404.970(b) states that if new and material evidence is submitted, the Appeals

14

Council shall consider the additional evidence only where it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b). If the new and material evidence relates to the adjudicated period, the ALJ must then evaluate the entire record, including the new evidence. *Id*. Mr. Kolosso submitted a Mental Impairment Questionnaire from Dr. Winston to the Appeals Council after the ALJ rendered its decision on January 21, 2015. Dr. Winston's questionnaire was dated March 3, 2015. Because the ALJ decided Mr. Kolosso's case through January 21, 2015, the Appeals Council found the new evidence to be outside the relevant time-period. The Court disagrees.

While Dr. Winston's questionnaire may have been dated March 3, 2015, the questionnaire itself reflects Dr. Winston's interactions with Mr. Kolosso since December 8, 2014. Report from James Winston MD, ECF No. 26. Thus, the additional evidence is time-relevant as it relates to the period on or before the date of the ALJ's hearing decision.

Nonetheless, it does not follow that a remand or reversal is warranted. As stated in the defendant's memorandum, the applicable regulation does not authorize the Appeals Council to review an ALJ's decision simply because new, material, and time-relevant evidence is submitted. Review of an ALJ's decision is only appropriate where the new evidence makes the ALJ's decision contrary to the weight of the evidence. Def.'s Mem. 11; *See* 20 C.F.R. § 404.970(b). Dr. Winston's questionnaire fails to meet that standard.

Dr. Winston did not examine Mr. Kolosso until December 8, 2014, a little over a month before the ALJ made its hearing decision. ECF. No. 26. There is no indication that Dr. Winston's opinion is based on a long-term assessment of Mr. Kolosso's functioning and limitations. Furthermore, like Dr. Hanson's opinion evidence, which the ALJ gave little weight to, Dr. Winston's opinion does not appear to be supported by objective medical evidence or testing. For example, Dr. Winston opinioned that Mr. Kolosso has "marked" functional limitation in all categories, ECF No. 26 at 5, but provides no basis for that determination. Additionally, Dr. Winston opined that Mr. Kolosso has had four or more episodes of decompensation, each lasting at least two weeks, but there is no objective evidence elsewhere in the record to support that opinion. For these reasons, the Appeals Council did not err in rejecting the opinion evidence of Dr. Winston.

## IV. Conclusion

For all the above-mentioned reasons, the Court finds that the ALJ did not commit reversible error in making an unfavorable disability determination. The Court will therefore affirm the ALJ's decision denying Mr. Kolosso's claim for disability benefits.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of August, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge